335 So.2d 634 (1975)
In re ESTATE OF Beatrice S. RASMUSSEN, Deceased.
John B. MATTINGLY, Petitioner,
v.
Honorable Edwin DUFF, II, Sheriff of Volusia County, Respondent.
John B. MATTINGLY, Appellant (Executor),
v.
The Honorable J. Robert DURDEN, Circuit Judge, Probate Division, Seventh Judicial Circuit, Appellee (Judge).
Nos. Y-203 and 293.
District Court of Appeal of Florida, First District.
December 2, 1975.
*635 John R. Lawson, Jr. and John Radey, Holland & Knight, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen., A.S. Johnston, Asst. Atty. Gen., and Isham Adams, Daytona Beach (in Y-293 only), for appellee.
MILLS, Judge.
The executor seeks review of an order of commitment rendered by the Probate Division of the Volusia County Circuit Court which adjudges him guilty of contempt, and commits him to jail until he complies with the court's order which directs him to produce copies of documents pertaining to his administration of the estate. Before filing this interlocutory appeal, the executor filed a petition for writ of habeas corpus with this court which the court granted pending disposition of the appeal. The issues raised here are: (1) whether the order of commitment is for civil or criminal contempt; and (2) whether an executor may invoke the privilege against self-incrimination when ordered to produce copies of records pertaining to his administration of an estate.
Mattingly was executor of the Rasmussen Estate from 1 July 1965 until it was closed by blanket order on 20 November 1972. On 3 April 1975, the court of its own motion reopened the estate, because it found that Mattingly had neglected to perform the duties required of him by law; he had neglected to distribute a bequest of $1,234.46 to the Deland Public Library, and he had converted this sum to his own use. Because of its findings, the court issued an order directing Mattingly to show cause why he should not be held in contempt for failure to pay the bequest; ordered Mattingly to explain the transfer of the $1,234.46 from the estate account to his personal trust or escrow account; and ordered Mattingly to produce all deposit slips, bank account books, cancelled vouchers, receipts and all other documents pertaining to his administration of the estate. Before the show cause hearing, Mattingly paid the bequest to the Library and filed its receipt and release. At the hearing, he filed his response to the order stating that he could not locate his estate file, but was continuing his search, and would inform the court as soon as he located it; he testified to the same. The court pointed out that the estate file contained an order of distribution, based on Mattingly's petition therefor, requiring a distribution of $10,790.21 to the Presbyterian Church of Deland and $7,234.47 to the West Volusia Memorial Hospital, but the file contained no receipts or other indication that these disbursements had been made. Mattingly was unable to recall the actions taken by him in the administration of the estate. At the request of Mattingly, the hearing was continued to a later date. At the subsequent hearing, Mattingly informed the court that he had located the documents required by the court's show cause order, but refused to produce them on the ground that they might incriminate him. Mattingly raised the privilege against self-incrimination, because there were criminal and bar grievance proceedings pending against him concerning similar circumstances. The court held Mattingly in contempt, and committed him to jail until he produced the documents.
Mattingly contends the proceeding was for indirect criminal contempt, therefore, he was entitled to a bill of particulars. Apparently, the Judge considers the matter a civil contempt.
A criminal contempt proceeding is instituted solely to vindicate the authority of the court or punish for conduct offensive to the public in violation of a court order. In a civil contempt proceeding, an offended party is seeking personal relief. Direct contempt is committed in the presence of the court; indirect contempt is committed out of the presence of the court. When imprisonment is ordered in a criminal contempt proceeding, it is punitive in nature, and is for a fixed term. In a civil contempt proceeding, the imprisonment is coercive in nature, and is made contingent upon compliance with the court's order. Usually a criminal contempt proceeding is brought in *636 the name of the public, while civil contempt is brought in the name of the party for a personal wrong committed against him in violation of the court's order. Demetree v. State, 89 So.2d 498 (Fla. 1956).
Often, it is difficult to determine whether an act is civil or criminal contempt. The act may have characteristics of both. We are confronted with such a situation here. Under the circumstances of the case before us, it is our opinion that the major factor to be considered is the purpose for which the court exercised its contempt authority. Mattingly had petitioned the court for an order of distribution to certain beneficiaries; the order was rendered, but after about two and one-half years the estate file contained no information which indicated the distribution had been made. In the interest of the estate, of the beneficiaries, and of the proper administration of the estate, the court ordered the executor to produce his file pertaining to his administration of the estate, so that the court could determine whether the executor had performed the duties required of him by law. When the executor refused to produce the records, the court inflicted coercive punishment, contingent upon production of the records. The contempt proceeding conducted by the court in this case was for civil contempt. It is interesting to note that the executor seeks review by interlocutory appeal which is the proper method to follow when seeking review of a judgment of civil contempt; if, as the executor contends, this was a criminal contempt, the executor should have brought a full appeal. Local Lodge No. 1248 of International Ass'n of Machinists v. St. Regis Paper Co., 125 So.2d 337 (Fla.App. 1st, 1961).
The privilege against self-incrimination is a personal one. The individual and his records are both constitutionally protected. However, this immunity is designed to protect personal documents or papers, or at least those in his possession in a purely personal capacity. State v. Dawson, 290 So.2d 79 (Fla.App. 1st, 1974). The documents sought in the case before us were not personal to Mattingly; they were documents which he was required to prepare or keep in carrying out his fiduciary duties as executor of the estate. We agree with the probate court that the executor, Mattingly, was not entitled to the constitutional protection sought by him. To hold otherwise, would permit a fiduciary to neglect his duties, and then to refuse to comply with a court order, which seeks to compel him to comply, by taking the "fifth". We do not mean that an individual serving in a fiduciary capacity is prohibited from asserting his privilege against self-incrimination as to purely personal documents which may be located in the file or records maintained by him in his fiduciary capacity.
The interlocutory appeal is dismissed, and the writ of habeas corpus is quashed.
BOYER, C.J., and TENCH, Associate Judge, concur.